UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No: 8:21-cv-0696

SOUTHSHORE HOSPITALITY
MANAGEMENT, LLC D/B/A
SUNSET GRILL AT LITTLE HARBOR,

   Plaintiff,

vs.

INDEPENDENT SPECIALTY
INSURANCE COMPANY, INC.,

   Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

   Defendants, INDEPENDENT SPECIALTY INSURANCE COMPANY, INC. (hereinafter as the "Defendant"), move to dismiss Plaintiff's Complaint, by Plaintiff SOUTHSHORE HOSPITALITY MANAGEMENT, LLC D/B/A SUNSET GRILL AT LITTLE HARBOR (hereinafter as "Plaintiff"), because it does not, and cannot, state a cause of action.  Plaintiff brings this action against the Defendant regarding a claimed business income loss as a result of the COVID-19 pandemic.  Plaintiff's Complaint must be dismissed for several reasons:

   (1) The Plaintiff fails to plead the essential elements to trigger Business Income coverage under the Policy - "direct physical loss of or damage to Covered Property" that results in the loss of income. Plaintiff's Complaint does not allege any

actual property damage, a condition precedent to trigger coverage and a required element to plead a cause of action. A true and correct copy of the Plaintiff's Complaint is attached hereto as **Exhibit "1."**

(2)    The Policy also provides Business Income coverage if a civil authority prohibits access to the insured property and/or the ingress or egress is prohibited as a direct result of a Covered Cause of Loss to property not insured. Again, the Plaintiff fails to allege the necessary elements to establish a cause of action – that there was actual direct physical loss to any property, including a nearby property, or that access to the insured property was prohibited because of such direct physical loss.

(3)    Even if these requirements had been met, coverage is nonetheless barred by the policies' exclusions.  The Loss Due to Virus or Bacteria Exclusion precludes coverage for any claim arising out of a loss due to any virus or threat thereof or any claim related to any virus that poses a threat to human health. Here, Plaintiff's insurance claim arises out of the government orders to stop the spread of COVID-19 and, therefore, squarely falls within this exclusion.

(4)    Notwithstanding the reasons noted above, with respect to Count II, Plaintiff has failed to establish the existence of any doubt to the meaning of the document sued under. The declaratory relief (Count II) is also duplicative of Plaintiff's breach of contract claim (Count I).

Based solely on the allegations of Plaintiff's Complaint, the exhibits thereto, and the terms, conditions, and exclusions contained in the Policy, the Defendant

respectfully requests this Court to dismiss Plaintiff's Complaint, with prejudice, for failure to state a cause of action upon which relief can be granted.

## I.     THE POLICY

Plaintiff is a Florida corporation that owns a restaurant in Hillsborough County, Florida. *See* Plaintiff's Complaint at ¶2. The Defendant subscribed to Policy Number VVX-CU-703236, which was issued to Plaintiff for the period of May 5, 2019 to May 5, 2020 (hereinafter as the "Policy"). *See* Plaintiff's Complaint, at Ex. A. The Policy is Exhibit A to the Plaintiff's Complaint. The Policy includes the Small Commercial Property Form, SMB 300 1902 CW, the Ancillary Coverage & Sublimits, SMB 407 1811 CW, the All Other Perils Endorsement SMB 402 1712 CW, and insures the property located at 602 Bahia Del Sol Dr., Ruskin, FL 33570 (hereinafter as the "Property"), subject to its terms, provisions, conditions and exclusions.  *See* Plaintiff's Complaint, at Ex. A.

The Policy provides coverage as follows:

### A.     Coverages

We will pay for sudden and accidental direct physical loss of or damage to Covered Property at the *locations* described in the Declarations caused by or resulting from any Covered Cause of Loss, during the policy period shown in the Declarations.

This policy only insures against losses resulting from the Covered Causes of Loss of sudden and accidental direct physical loss or damage to Covered Property, except as excluded. Loss or damage from all other causes of loss, whether caused directly or indirectly, are excluded from coverage under this policy, including, but not limited to, any pre-existing building damage at the time of any loss or damage for which claim is made under this policy.

*Id.* at Form SMB 300 1902 CW, at p. 1 of 39. The Policy defines covered cause of loss

as follows:

> **B.   COVERED CAUSE OF LOSS**
> In addition to the Covered Causes of Loss in the policy, the following
> Causes of Loss are included:
> 1.   Covered Causes of Loss shall include all other perils, which
>      means all sudden and accidental direct physical loss unless the
>      loss is excluded or limited in this policy.

*Id.* at Form SMB 402 1712 CW.  The Policy does provide business income coverage.

In order to trigger such coverage, the Policy requires direct physical loss of or damage

to the Property caused by a Covered Cause of Loss as follows:

> **A.   Coverages**
>
> **3.   Coverage D - Business Income Coverages**
> * * *
> This policy is extended to cover Business Income Coverages and
> Additional Business Income Coverages for the Actual Loss
> Sustained by you up to the annual limits shown in the
> Declarations, during the Period of Interruption directly resulting
> from a Covered Cause of Loss to Covered Property.

As noted above, Business Income coverage is only provided for the "actual loss

sustained" during the "period of interruption" that are defined as:

> **3.   Coverage D - Business Income Coverages**
> **a.   Actual loss sustained** occurs in the event you are prevented from
> producing goods or from continuing its business operations or services
> and are unable to:
> 1)   Make up lost production within 365 continuous days after the
>      Period of Interruption, or
> 2)   Continue business operations or services:
>      a)   through the use of any property or service owned or
>           controlled by you; or
>      b)   obtainable from other sources, whether the property or
>           service is at an insured *location*;
>           or

      c)       through working extra time or overtime at any other substitute *locations*, including any other *locations* acquired or for this purpose;

then subject to all other conditions of this policy, for the Actual Loss Sustained of the following during the Period of Interruption shall be Covered Property.

**b.**    **The Period of Interruption**, not to exceed 365 continuous days, is

    1)      from the time of physical loss or damage insured against by this policy to the time when, with the exercise of due diligence and dispatch, to either:

        a)      Resume normal operations; or

        b)      Repair, replace, or prepare for operations, the physically damaged covered buildings and equipment, to the same or equivalent physical and operating conditions that existed prior to the loss or damage, whichever is less.

        c)      Such period of time shall not be cut short by the expiration or earlier termination date of the policy.

*Id.* at Form SMB 300 1902 CW, at p. 4-5 of 39. As shown above, business income coverage is only triggered when business operations are suspended due to direct physical loss to the Property. Stated differently, business income coverage is not triggered if the suspension of operations is caused by anything other than direct physical loss to the Property by a Covered Cause of Loss. Additionally, coverage is only provided for that time needed to repair, rebuild, or replace the damaged property. Here, the Plaintiff has made no allegations of any need to repair, rebuild or replace any portion of the Property.

The Policy further provides ingress and egress and civil authority coverage but, again, requires direct physical loss to property not insured to trigger this coverage:

**e.**    **Additional Business Income Coverages** will be:

            ***

**4)**    **Ingress and Egress**: This policy is extended to cover the Actual Loss Sustained during the Period of Interruption when ingress to or egress from your covered location is prohibited as a direct result of a Covered Cause of

Loss to real property not insured. **The insured physical loss or damage** must occur within five (5) statute miles from your covered location in order for coverage to apply. Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no more than the number of days shown on the Sublimits of the Ancillary Coverage and Sublimits Endorsement.

    **5) Interruption by Civil or Military Authority**: This policy is extended to cover the Actual Loss Sustained during the Period of Interruption when access to your covered location is prohibited by an order of civil or military authority, if, such order is a direct result of a Covered Cause of Loss to real property not insured. **Your physical loss or damage must occur** within five (5) statute miles from your covered *location* for coverage to apply. Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no more than the number of days shown on the Ancillary Coverage and Sublimits Endorsement.

*Id.* at Form SMB 300 1902 CW, at p. 4-5 of 39 (emphasis added). Thus, among the requirements to trigger civil authority and/or ingress and egress coverage, direct physical loss to nearby property must prohibit access to the Property.

The Policy further provides spoilage coverage but, again, requires direct physical loss or damage to trigger this coverage:

**C.   Additional Coverages**
***

    **30. Spoilage**
This policy is extended to cover Spoilage as a direct result of a Covered Cause of Loss. This policy will pay for sudden and accidental direct physical loss or damage to:
    a. Perishable Goods due to Spoilage;
***
Perishable Goods means personal property:
1)    maintained under controlled conditions for its preservation, and
2)    susceptible to loss or damage if the controlled conditions change.
Spoilage Exclusions: There shall be no coverage under this policy for loss or damage caused by or resulting from:
1)    The disconnection of any refrigerating, cooling or humidity control system from the source of power; and/ or
2)    The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

The Policy also contains certain applicable exclusions. Among those exclusions are the Loss Due to Virus or Bacteria Exclusion that states:

**24. Loss Due to Virus or Bacteria Exclusion**

    a.    The exclusion set forth in subparagraph b. below, applies to all coverage under all forms and endorsements that comprise this policy, including but not limited to forms or endorsements that cover property damage to building(s) or personal property and forms or endorsements relating to Business Income Coverages.

    b.    Loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease is excluded.

        However, this exclusion does not apply to loss or damage caused by or resulting from *fungus, mold(s), mildew, spore(s) or yeast*.  Such loss or damage is addressed in a separate exclusion in this policy.

        (1)    With respect to any loss or damage subject to the exclusion in subparagraph b. above, such exclusion supersedes any exclusion relating to *pollutants or contaminants*.

        (2)    The terms of the exclusion in subparagraph b. above or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded by this policy.

*Id.* at Form SMB 300 1902 CW, at p. 20 of 39. The Policy excludes coverage for any loss or damage caused by or resulting from any virus.

## II.    THE PLAINTIFF'S CLAIM

Plaintiff alleges a Hillsborough County order and Executive Order Number 20-71 were "issued in response to the state of emergency related to Covid-19." *See* Exhibit 1, ¶ 9. Plaintiff alleges the same Hillsborough County order and Executive Order Number 20-71 "caused the Plaintiff to shut down and/or restrict business." *See* Exhibit

1, ¶ 6. Additionally, Plaintiff alleges the restrictions of these same orders "resulted in a loss of business income and food spoilage" for the Plaintiff. *See* Exhibit 1, ¶ 6. Furthermore, Plaintiff alleges that the closure of other businesses caused damage to those businesses, preventing ingress and egress to the Plaintiff's Property. *See id.* at ¶ 26-27.

However, the Plaintiff's Complaint notably fails to provide any description of the "direct physical loss of or damage" to the Property or nearby property as required to establish its burden under the Policy's insuring agreement. Moreover, the attached government orders were not issues a direct result of a Covered Cause of Loss to real property not insured located within five (5) miles of the Property.

The orders referenced in Plaintiff's Complaint were implemented to reduce the spread of COVID-19 by adopting social distancing measures and curtailing business operations of non-essential businesses.

## III.   THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION UNDER FLORIDA'S APPLICABLE LEGAL STANDARDS.

The purpose of a complaint is to advise the court and the defendant of the nature of a cause of action asserted by the plaintiff. *Connolly vs. Sebeco, Inc.*, 89 So. 2d 482 (Fla. 1956); *Kest vs. Nathanson*, 216 So.2d 233 (Fla. 4th DCA 1968). A complaint must set out the ultimate facts that support each claim so that the court can clearly determine what allegations are being presented and the defendant can understand the factual assertions that give rise to legal liability. *Barrett vs. City of Margate*, 743 So. 2d 1160, 1162-63 (Fla. 4th DCA 1999). "It is insufficient to plead opinions, theories, legal

conclusions or argument." *Id.*; *Other Place of Miami, Inc. v. City of Hialeah Gardens*, 353 So.2d 861, 862 (Fla. 3d DCA 1977) (stating that "mere statements of opinion or conclusions unsupported by facts are insufficient to survive a motion to dismiss").

"A motion to dismiss tests whether the Plaintiff has stated a cause of action." *Regis Ins. Co. v. Miami Mgmt., Inc.*, 902 So. 2d 966, 968 (Fla. 4th DCA 2005) (citing *Bell v. Indian River Mem'l Hosp.*, 778 So. 2d 1030, 1032 (Fla. 4th DCA 2001). Florida Rule of Civil Procedure 1.140(b) states that a defense of failure to state a cause of action is permitted to be raised prior to any further responsive pleading. In Florida, "[a] pleading which sets forth a claim for relief . . . must state a cause of action and . . . a short and plain statement of the ultimate facts showing that the pleader is entitled to relief . . ." Fla. R. Civ. P. 1.110(b).  The primary purpose of a motion to dismiss is to determine whether a complaint properly states a cause of action for which relief can be granted.  *Sobi v. Fairfield Resorts, Inc.*, 846 So. 2d 1204, 1207 (Fla. 5th DCA 2003).

A court is limited to the four corners of the Complaint, and the incorporated attachments, to rule on a motion to dismiss.  *Zurich Am. Ins. Co. v. Puccini, LLC,* 271 So. 3d 1079 (Fla. 3d DCA Feb. 6, 2019).  However, when a complaint references legal documents, those documents are implicitly incorporated into the complaint and may be considered in a motion to dismiss.  *One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015).  "If an attached document negates the pleader's cause of action ... the plain language of the document will control and may be the basis for a motion to dismiss." *Health Application Sys., Inc. v. Hartford Life & Accident Ins. Co.*, 381 So.2d 294, 297 (Fla. 1st DCA 1980). Thus, this Court may consider the Policy and

The Defendant's denial letter, amongst other items attached and/or referenced in the Plaintiff's Complaint.

Furthermore, while "the most common and appropriate pre-trial motion to raise the issue of whether a particular exclusion clause in an insurance policy applies to prohibit recovery is a motion for summary judgment. . . the applicability of policy exclusions contained in a policy attached as an exhibit may be raised by a motion to dismiss when the allegations of the Complaint clearly show that the exclusions do apply." *Florida Farm Bureau Gen. Ins. Co. v. Ins. Co. of N. Am.*, 763 So. 2d 429, 434 (Fla. 5th DCA 2000).

## IV.    MEMORANDUM OF LAW

Florida law places the burden on the insured, as the entity presenting the claim for coverage, to prove that the claim falls within the policy's affirmative grant of coverage.  *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3 d 1511, 1516 (11th Cir. 1997*) see also Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, 172 F. Supp. 3d 1326, 1334 (M.D. Fla. 2016) ("the insured bears the burden of proving that a claim is covered by the insurance policy").  It necessarily follows that, to state a valid cause of action, an insured plaintiff's pleading must allege ultimate facts that bring the claim within the policy's insuring agreement. *See id.*

As discussed in detail below, Plaintiff fails to allege a claim that falls within the policy's insuring agreement. Specifically, Plaintiff fails to allege direct physical loss of or damage to the Property or nearby properties. If a document attached to a pleading

negates the pleader's cause of action, the plain language of the document will control and may be the basis for a motion to dismiss. *McKey v. D.R. Goldenson & Co.*, Inc., 763 So. 2d 409, 410 (Fla. 2d DCA 2000). Here, the Policy at issue is attached to Plaintiff's Complaint. Based on the plain language of the Policy, the Policy covers direct physical loss of or damage to the Property as described in the Policy's declarations, and loss due to Coronavirus is excluded. A plain language reading of the parties' contract leads to the inescapable conclusion that Plaintiff's alleged loss is not covered. Florida law places the burden on the insured to plead and prove a viable claim. Plaintiff has not and cannot meet that burden.

## A.    Plaintiff's Complaint Fails to Allege Direct Physical Loss of or Damage to the Property.

The Florida Supreme Court instructs that an all-risk policy does not cover all conceivable losses. *Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005) ("'all-risk' policy is not an 'all loss' policy"). Because of this, Florida law places the initial burden on the insured to demonstrate the claim falls within the Policy. *Mt. Hawley Ins. Co. v. Roebuck*, 383 F. Supp. 3d 1351, 1359 (S.D. Fla. 2019).

Applying this standard here, the plain language of the Policy breaks out the required elements to recover for business income loss under the Policy.[1]  The Plaintiff

---

[1] Insurance contracts are construed "in accordance with the plain language of the policy." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003); *see also Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So.2d 528, 532 (Fla. 2005). The terms of an insurance policy are understood in their ordinary sense, and are to be read in a reasonable, non-technical way. *See Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002). Thus, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it

must plead and then prove under the terms of the Policy that: (1) there was direct physical loss to the Property; (2) the physical loss to the Property was caused by a covered cause of loss; (3) there was a necessary suspension of the insured's operations; (4) the suspension was caused by the covered damage to the Property; (5) there was an actual loss of business income during a period of restoration; and (6) the actual loss of income was caused by the suspension of operations. *Dictiomatic, Inc. v. U.S. Fid. & Guar. Co.*, 958 F. Supp. 594, 602 (S.D. Fla. 1997); *see also* Ex. 1, at Ex. A, Policy. The first element requires the business income loss at issue to be the direct result of physical loss to the Property. *Dictiomatic, Inc.*, 958 F. Supp. at 602; *see also* Ex. 1, at Ex. A. Therefore, Plaintiff must not only plead direct physical loss to the Property but also prove such alleged damage exists. Pleading conclusory statements alone is insufficient to establish this burden. *Other Place of Miami, Inc.*, 353 So. 2d at 862.

Courts provide guidance on the meaning of "direct physical loss."  A direct physical loss is "the diminution of value" in insured property. *Homeowners Choice Prop. & Cas. v. Miguel Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017). The terms "'[d]irect' and 'physical' modify loss and impose the requirement that the damage be actual." *Id.*

"A direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon

---

is a basic policy provision or an exclusionary provision." *Taurus Holdings*, 913 So.2d at 532 (*quoting Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)).

the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." *Mama Jo's Inc. v. Sparta Ins. Co.*, Case No. 17-cv-23362-KMM, 2018 WL 3412974 at * 9 (S.D. Fla. June 10, 2018) (*citing MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Cal. Ct. App. 2d 2010)).  In line with this definition, the Third Circuit also held that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure." *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (quoting 10A Couch on Ins. §148:46 (3d. Ed. West 1998) (applying New Jersey law). Therefore, if the property can be cleaned and restored to its original function, no covered loss has occurred. *See Mama Jo's Inc. v. Sparta Insurance Company*, Case No. 18-12887, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020) ("cleaning is not considered direct physical loss"); *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012). The relevant inquiry is whether the structure continues to function.  *See Port Auth.*, 311 F.3d at 236. If "[t]he structure continues to function—it has not lost its utility" and the "owner has not suffered a loss." *Id.*

Applying these standards here, Plaintiff fails to meet their burden.  Plaintiff's Complaint alleges that "Civil Authorities referenced above were issued in response to the state of emergency related to Covid-19." *See* Exhibit 1, at ¶9.  Plaintiff makes conclusory allegations that it suffered "damage" and even attempts to distinguish the Plaintiff's alleged damage from direct physical damage. *See* Exhibit 1, at ¶23-27.

Plaintiff fails to include any factual allegations of what physical damage occurred, how the physical damage occurred, when the physical damage occurred, and/or what needs to be repaired, replaced, or rebuilt. Accordingly, none of Plaintiff's allegations state a plausible claim that Plaintiff has suffered a "direct physical loss or damage" as required to trigger coverage under the Policy.

The Policy provides coverage for business income losses only if these losses directly result from a Covered Cause of Loss (direct physical loss) to the Property. *See* Ex. 1, at Exhibit A, Form SMB 300 1902 CW, at p. 4-5 of 39. Further, business income coverage is only provided for the "actual loss sustained" during the "period of restoration," which begins after "the time of physical loss or damage" and covers the time it takes to repair, rebuild or replace the Property or to resume business operations. *See id.* Here, Plaintiff has not made any allegations of a necessary suspension of operations during the period of restoration needed to conduct repairs, rebuild or replace the Property or to resume business further supporting the notion that the property did not sustain any direct physical loss of or damage to the Property to trigger coverage under the Policy.

Even if the virus requires that appropriate precautions be taken, the Plaintiff cannot plausibly allege that it caused direct physical loss to the Property itself. The Plaintiff cannot establish that the virus destroys the Property's physical utility as a structure, or that it produces any physical alteration. For these reasons, Plaintiff has not and cannot plausibly claim that the virus caused direct physical loss of or damage to the Property.

**B.** **This Court should align with the other courts regarding business income coverage related to Covid-19, which have found that the virus does not cause physical loss.**

Plaintiff is not the first insured to request a court find coverage for business income coverage related to COVID-19. Courts across the country already held the virus does not cause physical loss of or damage to Property when plaintiff fails to plead actual physical damage to property. One of the first such cases was decided in the Southern District of New York. *See* Teleconference, Order to Show Cause at 4-5, *Soc. Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-CV-3311- VEC (S.D.N.Y. May 14, 2020). The New York Court stated the virus "damages lungs. It doesn't damage [the property at issue]." *Id.* at 4:25-5:4.

Since then, several other courts have all reached the same conclusion regarding coverage for insureds' claims for COVID-19 related loss of business income claims, since there was no direct physical loss of or damage to property. A few of those cases are noted below.

- Court granted insurer's motion to dismiss a COVID-19 business interruption claim in which insured failed to allege it suffered direct physical loss of or damage to property as required for business income and extra expense coverage. *See* M*ark's Engine Company No. 28 Restaurant, LLC v. The Travelers Indemnity Company of Connecticut, et al.*, No. 20-04423, Notice of Appeal (C.D. Calif. Oct. 5, 2020)

- Magistrate judge recommended the court grant insurer's motion to dismiss a COVID-19 business interruption coverage case noting that the phrase "direct physical" modifies the words " loss" and "damage" in the policy to mean that any interruption must be caused by some physical problem with the covered property. *See Malaube, LLC v. Greenwich Ins. Co.*, 20-22615-CIV, 2020 WL 5051581, at *1 (S.D. Fla. Aug. 26, 2020).

- Court granted insurer's motion to dismiss a COVID-19 business interruption claim in which insured failed to allege that it could not access its property as a

result of government order and failed to describe how its property suffered direct physical loss or damage. See *Infinity Exhibits, Inc. v. Certain The Defendant at Lloyd's London Known as Syndicate PEM 4000*, 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *1 (M.D. Fla. Sept. 28, 2020).

- Court granted insurers' motion to dismiss a COVID-19 business interruption claim in which Plaintiff sought coverage for income lost as a result of government shutdown orders that prevented the ordinary and intended use of a property. *See 10E, LLC v. Travelers Indemnity Co. of Connecticut*, No. 2:20-cv-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) (Noting that impaired use or value cannot substitute for physical loss or damage, and that Plaintiffs cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage.)

Plaintiff's claimed physical loss and damage is an economic one solely related to loss of business income and spoilage. As recently held by the Middle District of Florida, insurance policies requiring direct physical loss of or damage to property require "actual, concrete damage" to trigger coverage. *See Infinity Exhibits, Inc. v. Certain the Defendant at Lloyd's London Known as Syndicate PEM 4000*, 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *1 (M.D. Fla. Sept. 28, 2020). In *Infinity Exhibits*, the plaintiff sought a declaration regarding its business income losses and related expenses that resulted from orders mandating closure due to COVID-19. *See id.* The court noted Plaintiff's efforts to equate economic damage with physical loss and rejected plaintiff's position. *Id.* at 3-5. In so doing, the court cited to various opinions denying business interruption claims for COVID-19 and held that there was no coverage under the policies if they require direct physical loss of or damage to covered property. *Id.* at 4-5.

Here, as in *Infinity Exhibits*, the Policy states coverage is only afforded for business income loss if that loss is caused by direct physical loss of or damage to the

property. No such physical loss of or damage has been alleged in Plaintiff's Complaint. Merely including the word "damage" in the Plaintiff's Complaint is insufficient to avoid dismissal when the allegations make clear that Plaintiff is solely claiming loss of use without any actual, concrete, physical damage. Plaintiff's Claim is solely economic in nature and does not relate to any sort of physical damage and, therefore, is not covered under the Policy. Accordingly, Plaintiff's Complaint does not allege any facts that trigger coverage under the Policy and its Claim fails as a matter of law. For these reasons and the reasons listed above, the Defendant requests this Court follow the precedent set by courts across the country and dismiss Plaintiff's Complaint.

### C.    Plaintiff Has Not Pled a Valid Civil Authority Claim.

Plaintiff's Complaint alleges the government orders attached to the Complaint "were issued in response to the state of emergency related to Covid-19" and "caused the Plaintiff to shut down and/or restrict business." *See* Exhibit 1, ¶ 6-9. Plaintiff fails to cite to or provide any specific government orders, decrees, or mandates that specifically require the Plaintiff to close their business or limit access specifically to the Property. Instead, Plaintiff states an order issued by Hillsborough County and Executive Order Number 20-71 suspended "on-premises food consumption for customers." *See* Exhibit 1, ¶ 6. The orders cited by Plaintiff never prohibited Plaintiff access to the Property. Additionally, Plaintiff even admits "limited services may have been available." See Exhibit 1, ¶ 32. As such, Plaintiff's allegations fail to trigger the Policy's civil authority coverage.

To the extent Plaintiff contends that coverage exists under the policy's additional coverage described by the Civil Authority provision, that claim also fails as a matter of law because Plaintiff's allegations fail to trigger the Policy's civil authority coverage. Here, the Policy's civil authority coverage requires that (a) an order of civil authority "is a direct result of a Covered Cause of Loss to real property not insured;" (b) an "Actual Loss Sustained;" (c) the actual loss sustained was "during the Period of Interruption;" and (d) "access to your covered location is prohibited by an order of civil or military authority." *See* Ex. 1, Exhibit A, Form SMB 300 1902 CW, at p. 4-5 of 39. Therefore, unless the civil authority, as a result of damage to other property pursuant to a covered cause of loss, prohibits access to the Property, civil authority coverage is not triggered.

Plaintiff's civil authority claim fails because Plaintiff's Complaint fails to (1) allege such damage to property other than the described premises and (2) provide an order of civil authority prohibiting access to the insured's property because of such damage. Additionally, Plaintiff even admits "limited services may have been available." See Exhibit 1, ¶ 32.  For the same reasons as set forth above, Plaintiff cannot claim that any of those things have occurred. Further, Plaintiff has not alleged any kind of direct physical loss of or damage to other property, and no civil authority has prohibited access to the Property. The coverage therefore does not apply. *See. e.g. Dickie Brennan & Co., Inc. v. Lexington Insurance Co.*, 636 F.3d 683, 686–87 (5th Cir. 2011) ("Civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a

direct result of physical damage to other premises in the proximity of the insured's property.")

Pursuant to the above, Plaintiff cannot establish that physical damage occurred due to COVID-19, that the government orders referenced in its Complaint prohibited access to the Property, or that there is any relationship between the alleged civil authority orders and alleged physical loss or damage to the Property. Moreover, these government orders were not taken in response to covered physical damage.  Instead, they were preventative measures issued for public health purposes. Accordingly, the Policy's civil authority coverage extension is not triggered, and the Complaint must be dismissed for failure to state a cause of action.

**D.    Coverage Is Barred by the Virus Exclusion.**

According to Plaintiff's Complaint, Plaintiff's claims arise out of alleged damages to Plaintiff's business caused by or resulting from COVID-19 and the government orders issued in response to COVID-19. *See* Exhibit 1, ¶ 6-9. Based on these allegations, Plaintiff's Complaint must be dismissed because Plaintiff's Claim is excluded from coverage by the Virus Exclusion within the Policy.

When resolving insurance coverage disputes, courts routinely dismiss complaints for failure to state a claim based on policy exclusions. *See, e.g., Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of America*, No. 20-00401, 2020 WL 5240218 (M.D. Fla., Sept. 2, 2020) (granting insurer's motion to dismiss a COVID-19 business interruption coverage case because "the plain language of the policy's exclusion" excluded coverage damages caused by COVID-19*; Zodiac Grp., Inc. v. Axis Surplus Ins.*

*Co.,* 542 Fed. Appx. 844, 845 (11th Cir. 2013) (affirming dismissal of Declaratory Judgment because the "plain language of the Policy precluded coverage" for the underlying claim).

Here, the Policy contains the Loss Due to Virus or Bacteria Exclusion that mandates dismissal of the action.  First, this Virus Exclusion specifically states the exclusion "applies to all coverage under all forms and endorsements that comprise this policy" including "forms or endorsements relating to Business Income Coverages." *See* Ex. 1, Exhibit A, Form SMB 300 1902 CW, at p. 20 of 39. Furthermore, the Virus Exclusion specifically states any "[l]oss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease is excluded." *See id.* Consequently, all damage caused by or resulting from COVID-19 is excluded under the Policy. *See id.*

The Plaintiff's Complaint clearly alleges only business interruption damages resulting from orders to stop the spread of the COVID-19 virus. Nothing in the Plaintiff's Complaint suggests damages unrelated to the spread of the COVID-19 virus. Therefore, since Plaintiff's claim stems from government orders issued in response to COVID-19, Plaintiff's claim is barred under the Policy and must be dismissed. *See Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of America*, No. 20-00401, 2020 WL 5240218 (M.D. Fla., Sept. 2, 2020); Exhibit 1, ¶ 6-9.

Likewise, Plaintiff cannot state a covered claim for policy benefits under the Business Income or Civil Authority provisions of the Policy for business income losses or incurred extra expenses caused by or resulting from the COVID-19 virus pandemic

because the Virus Exclusion applies regardless of any other language in the Policy. Therefore, the plain language of the Virus Exclusion bars Plaintiff's Claim, which directly or indirectly arises from COVID-19. Applying this exclusion, the Plaintiff's Complaint fails to state a cause of action for breach of contract or declaratory judgment because all of Plaintiff's claims fall under the Policy's Virus Exclusions.

### E. Count II Fails to Comply with Florida's Declaratory Judgement Act and is Duplicative of the Breach of Contract Action and Should Therefore be Dismissed.

Count II of Plaintiff's Complaint should be dismissed for failure to comply with Florida's Declaratory Judgment Act. It is well settled that a court should dismiss a declaratory judgment claim where the unambiguous language of the contract underlying the claim, or the applicable law, precludes the declaration sought, regardless of whether the elements of the cause are otherwise pled.[2]

---

[2] *See Venezia Lakes Homeowners Ass'n v. CSX Transp., Inc.,* 43 So. 3d 93, 95 (Fla. 3d DCA 2010) (affirming dismissal with prejudice of Declaratory Judgment seeking declaratory judgment because contract underlying dispute "clearly and unambiguously" precluded the plaintiffs legal theory); *Friedman v. New York Life Ins. Co.,* 985 So. 2d 56, 58-59 (Fla. 4th DCA 2008) (affirming dismissal with prejudice of declaratory judgment claim, in part, because attachment to Declaratory Judgment contradicted allegations in Declaratory Judgment thereby negating cause of action asserted); *Morton v. Zuckerman-Vernon Corp.,* 290 So. 2d 141, 143-45 (Fla. 3d DCA 1974) (reversing denial of motion to dismiss declaratory judgment action with instructions to dismiss Declaratory Judgment because declaration sought was precluded by the contract at issue); *see also Junco v. State Bd. of Accountancy,* 390 So. 2d 329, 330-32 (Fla. 1980) (affirming dismissal of action seeking declaratory judgment regarding constitutionality of Florida statute because statute was facially constitutional, thus precluding declaration sought); *see also McCarty v. Fla. State Road Dep't,* 211 So. 2d 226, 227 (Fla. 1st DCA 1968) (affirming dismissal of Declaratory Judgment seeking declaration because law regarding alleged issue was "so well settled and that a negative answer to such a question. . . is so obvious and inevitable that the very foundation or need for a declaratory decree is precluded").

Florida's Declaratory Judgment Act has been codified in Chapter 86, Florida Statutes.   To properly state a sustainable cause of action for declaratory relief, a complainant must allege that (1) there is a bona fide dispute between the parties; (2) the complainant has a justiciable question as to the existence or non-existence of some right, status, immunity, power, or privilege, or some fact upon which their existence may depend; (3) the complainant is in doubt as to the right, status, immunity, power, or privilege; and (4) there is a bona fide, actual, and present need for the declaration. *May v. Holley*, 59 So. 2d 636, 639 (Fla. 1952); *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 648 (Fla. 3d DCA 2006).   The complainant seeking a declaratory judgment must also show that the antagonistic and adverse interests are all before the court, and that the relief sought is not merely the giving of legal advice by the courts or the answers to questions propounded from sheer curiosity.   *City of Sarasota v. Mikos*, 613 So. 2d 566, 567 (Fla. 2d DCA 1993).

In order "[t]o trigger jurisdiction under the declaratory judgment act, the moving party must show that he is in doubt as to the existence or nonexistence of some right or status, and that he is entitled to have such doubt removed."   *Kelner v. Woody*, 399 So. 2d 35, 37 (Fla. 3d DCA 1981).   In other words, where a Declaratory Judgment demonstrates that a plaintiff's alleged "doubt" is objectively unreasonable, a court should dismiss a claim for declaratory relief, despite allegations of subjective doubt. *Id.* at 38 (affirming dismissal of declaratory judgment claim because Declaratory Judgment showed that alleged "doubt" was objectively unreasonable). Plaintiff's

allegations are purely formed by subjective doubt and, therefore, do not trigger jurisdiction under the declaratory judgment act. *See Kelner*, 399 So. 2d at 37.

Additionally, Count II of Plaintiff's Complaint is duplicative of the breach of contract action (Count I). Further, Plaintiff states that it "is in doubt of its rights and obligations under the subject policy." To the contrary, in the allegations common to all counts, Plaintiff alleges that the Policy provides coverage "for, among other things, loss of business income, and spoilage, caused by covered causes of loss, including interruption by Civil Authority, and prohibition of ingress and egress." *See* Exhibit 1, at ¶ 5. From the Complaint, the real dispute is a factual one concerning the existence of a loss and its valuation, if any. *See Tobon v. American Sec. Ins. Co.*, 2007 WL 1796250 at *2 (S.D. Fla. 2007). Thus, Plaintiff has not properly pled a claim for declaratory relief and, as a result, Count II of the Plaintiff's Complaint should be dismissed.

## V.    CONCLUSION

In sum, the Plaintiff's Complaint must be dismissed. Based on the pleadings and attachments, Plaintiff fails to plead facts that give rise to a covered claim. It is clear the Policy covers direct physical loss of or damage to the Property, while the Plaintiff's claims are non-physical losses. Even if the Plaintiff could allege a Covered Cause of Loss/actual physical damage, the Policy plainly and unambiguously excludes their purported loss by the Virus Exclusion referenced above.

The Policy negates the Plaintiff's causes of action. All of Plaintiff's claimed losses are related to the coronavirus, and nothing in the Plaintiff's Complaint suggests actual damages unrelated to the COVID-19 virus. Moreover, Plaintiff has failed to

establish the existence of any doubt to the meaning of the document sued under and the declaratory relief (Count II) is duplicative of Plaintiff's breach of contract claim (Count I).  As such, this matter should be dismissed in its entirety.

**WHEREFORE**, Defendant, **INDEPENDENT SPECIALTY INSURANCE COMPANY, INC.**, respectfully requests that this Honorable Court enter an Order dismissing Plaintiff's Complaint in its entirety with Prejudice, and for any and all other relief this Court deems just and proper.

Dated:  April 8, 2021.

Respectfully submitted,

*/s/ Richard M. Singer*
**VINCENT P. BEILMAN, III, ESQ.**
Florida Bar No. 23966
**RICHARD M. SINGER, ESQ.**
Florida Bar No.: 93036
**JASON F. TOM, ESQ.**
Florida Bar No. 125142
**WOOD, SMITH,**
**HENNING & BERMAN LLP**
7835 NW Beacon Square Blvd.
Second Floor
Boca Raton, FL 33487
Telephone: 786-858-7315
Facsimile: 954-337-0257
vbeilman@wshblaw.com
rsinger@wshblaw.com
jtom@wshblaw.com
ojimenez@wshblaw.com
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on April 8, 2021, a copy of the foregoing Motion To Dismiss Plaintiff's Complaint With Incorporated Memorandum Of Law was served on all parties, via CM/ECF E-file portal as follows:

Ronald S. Haynes, Esq.
Christopher Ligori & Associates
117 S. Willow Avenue
Tampa, Florida 33606
Pleadings@ligorilaw.com
*Co-Counsel for Plaintiff*

James L. Magazine, Esq.
Lucas & Magazine, PLLC
8606 Government Drive
New Port Richey, Florida 34654
lucasmagazine@lucasmagazine.com
*Co-Counsel for Plaintiff*

*/s/ Richard M. Singer*
**RICHARD M. SINGER, ESQ.**