UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SOUTHSHORE HOSPITALITY
MANAGEMENT, LLC, d/b/a
SUNSET GRILLE AT LITTLE
HARBOR, a domestic corporation,

    Plaintiff,

v.                                              Case No: 8:21-cv-696-KKM-AEP

INDEPENDENT SPECIALTY
INSURANCE COMPANY, INC.,

    Defendant.
_____

## ORDER

When Florida Governor Ron DeSantis and Hillsborough County suspended on-premises dining in March 2020, Southshore Hospitality Management, LLC, lost revenue and its food spoiled. It sought to recover these losses from Independent Specialty Insurance Company, Inc., its insurer; Independent denied coverage. Southshore then sued Independent, bringing claims for breach of contract and for a declaratory judgment that Independent owes Southshore under the policy. But the policy Independent issued to Southshore excluded losses caused by viruses, so Independent did not breach its contract with Southshore when it denied coverage. And because Independent did not breach the

contract, the Court dismisses both Southshore's breach of contract claim and its request for a declaratory judgment.

I. BACKGROUND

Independent issued Southshore an insurance policy effective May 5, 2019, and lasting through May 5, 2020. (Docs. 1-6 at 2; 1-1 at 2.) The policy insured both losses of business income and losses from perishable goods spoiling if caused by a covered cause of loss. (Docs. 1-1 at 2–3; 1-6 at 12, 23.) The policy's covered causes of losses included damages caused by certain weather, sinkholes, ground cover collapse, and all other "sudden and accidental direct physical loss" unless otherwise excluded. (Doc. 1-6 at 3, 9, 53.) But the policy excluded "[l]oss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Doc. 1-6 at 28.)

Due to the public health emergency caused by the spread of the COVID-19 virus, both the State of Florida and Hillsborough County suspended some operations of certain businesses. Specifically, on March 20, 2020, Governor DeSantis "order[ed] all restaurants and food establishments licensed . . . within the State of Florida to suspend on-premises food consumption for customers." (Doc. 1-6 at 86.) And six days later, on March 26, 2020, the Emergency Policy Group of Hillsborough County followed suit and likewise suspended on-premises dining. (Doc. 1-6 at 91–98.)

2

Southshore lost business income and its food spoiled. (Doc. 1-1 at 3.) It submitted a claim to Independent for those losses but Independent denied coverage. (Docs. 1-1 at 4; 1-6 at 110.) Southshore then sued Independent in state court, claiming that Independent breached its contract and seeking a declaratory judgment that Independent must pay Southshore damages for its losses from the above-described business interruption. (Doc. 1-1 at 4, 10.) Independent removed to federal court, (Doc. 1), and it now moves to dismiss, (Doc. 11).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp.*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* at 678 (quoting *Bell Atl.*

3

*Corp.*, 550 U.S. at 570). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## III.   ANALYSIS

Southshore alleges its insurance policy required Independent to cover Southshore's losses when government orders required it to halt on-premises dining. Independent refused to cover those losses and Southshore seeks damages for breach of contract and for a declaratory judgment that Independent must cover Southshore's losses under the insurance policy. Independent moves to dismiss, arguing Southshore's breach of contract claim fails because Southshore's losses were caused by a virus and its declaratory judgment claim fails because it is duplicative of its breach of contract claim. The Court agrees and dismisses both claims.

4

### A. Southshore Fails to State a Claim for Breach of Contract

Southshore brings a claim for breach of contract, alleging that Independent failed to cover Southshore's losses as required by their insurance contract. But Southshore fails to plausibly allege any breach, nor could it under the facts as alleged. Because amendment would be futile, the Court dismisses this claim with prejudice.

To state a claim for breach of contract under Florida law, a plaintiff must show "(1) a valid contract; (2) a material breach; and (3) damages." *Abbott Lab'ys, Inc. v. Gen. Elec. Cap.*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). Under Florida law, the interpretation of an insurance contract, including resolution of ambiguity, is a question of law. *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993). When interpreting an insurance contract under Florida law, a court should construe the contract "in accordance with the plain language of the policy." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). When the relevant policy language "is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous." *Id.* (alteration in original) (quotation omitted). But a provision which is "complex and [which] requires analysis for application . . . is not automatically" ambiguous. *Id.* (citation omitted). And the terms of an insurance policy "should be taken and understood in their ordinary sense." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident*

*Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249, 253 (Fla. 4th DCA 1972)).

Here, the parties do not dispute the validity of the contract or the facts as alleged by Southshore; instead, they disagree about whether Independent's conduct constituted a material breach under the terms of the contract. The question before the Court is thus one purely of law, ripe for adjudication at this stage.

Southshore alleges that Independent breached the insurance contract when it denied coverage for business income and food spoilage—the alleged losses Southshore suffered. But the policy excluded losses caused by a virus, which these undeniably were. Specifically, the policy excluded "[l]oss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Doc. 1-6 at 28.) The exclusion "applies to all coverage under all forms and endorsements that comprise this policy, including but not limited to forms or endorsements that cover property damage to building(s) or personal property and forms or endorsements relating to Business Income Coverages." (*Id.*) The policy's plain language admits of no exception and Southshore cites no policy provision which would supersede this exclusion or undermine its effect. Thus, if COVID-19 caused Southshore losses, then the policy does not cover those losses. (*Id.*)

In this case, COVID-19 is unquestionably a virus capable of "inducing physical distress, illness or disease," and it caused all of Southshore's losses. (*Id.*) According to Southshore, orders addressing the threat of COVID-19 from Governor DeSantis and Hillsborough County required Southshore to "shut down and[] restrict business" and caused the company's losses. (Doc. 1-1 at 3; Doc. 1-6 at 83 ("WHEREAS, on March 1, 2020, [Governor DeSantis] issued Executive Order 20-52 declaring a state of emergency for the entire State of Florida as a result of COVID-19 . . . ." (emphasis omitted)); *id.* at 90 ("WHEREAS, Hillsborough County must continue to take emergency action to lessen the spread of COVID-19 . . . ." (emphasis omitted)).) The losses Southshore allegedly suffered stemmed entirely from the orders limiting on-premises dining, and the orders stemmed entirely from COVID-19, a virus capable of inducing physical distress.

Southshore objects to this reasoning, but both of its arguments fail. First, Southshore contends that the policy language is ambiguous and could be reasonably interpreted to exclude losses which were caused only by a virus contaminating the insured property. (Doc. 12 at 6–7.) Although Florida courts interpret an ambiguous insurance policy—a policy that is susceptible to multiple reasonable interpretations—against its drafter and in favor of coverage, *see Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328, 1337 (11th Cir. 1997); *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000); *Gov't Emps. Ins. Co. v. Macedo*, 228

7

So. 3d 1111, 1113 (Fla. 2017) (quotation omitted), Southshore's proposed interpretation of the exclusion is not reasonable. The policy states that "[l]oss or damage caused by or resulting from any virus" is excluded. (Doc. 1-6 at 28.) Nothing in the exclusion limits its reach to losses stemming from the contamination of the insured property. *See also Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*, 21 F.4th 704, 712 (10th Cir. 2021) ("Under its plain language, the Virus Exclusion was not limited to instances where the virus was physically present at or on Goodwill's property."). The exclusion's sole limits are that a virus must cause the loss or damage and that that virus be capable of causing physical distress or illness. (*Id.*) Here, both limits are met: Governor DeSantis and Hillsborough County expressly issued the orders causing Southshore's loss due to COVID-19 and COVID-19 is a virus that can cause physical distress. Thus, the virus exclusion applies.

Second, Southshore argues that because both the government orders and COVID-19 caused its losses and the policy excludes only the latter cause from coverage, the policy covers its losses. (Doc. 12 at 8–9.) Southshore relies on the Florida "concurrent causation" doctrine, which permits an insured to recover a loss even if the insurance policy excludes one of the causes of the loss. *See Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 698 (Fla. 2016).

8

But Florida's "concurrent causation" doctrine does not apply here. Under the "concurrent causation" doctrine, an insured can recover, despite suffering a loss caused in part by an excluded cause of loss, so long as the "efficient proximate cause" of the loss cannot be determined. *Id.* at 698, 700. The "efficient proximate cause" is the cause "that set[s] the other in motion" and is "the cause to which the loss is attributable." *Id.* at 698. Governor DeSantis and Hillsborough County clearly stated that they issued the orders— the orders that Southshore contends caused its loss—because of COVID-19, an excluded cause of loss. (Doc. 1-6 at 28, 83.) Southshore does not "plausibly allege that 'the efficient cause,' . . . the one that set the others in motion, was anything other than the spread of the virus throughout [Florida and Hillsborough County], or that the virus was merely a remote cause of its losses." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 894 (9th Cir. 2021) (quotation omitted) (excluding coverage under a similarly worded exclusion and under a similar doctrine of causation); *see Pane Rustica, Inc. v. Greenwich Ins. Co.*, No. 8:20-CV-1783-KKM-AAS, 2021 WL 1087219, at *2 (M.D. Fla. Mar. 22, 2021) (Mizelle, J.) ("Here, the virus is clearly the peril that precipitated the government orders.").

The decisions of courts around the country dismissing with prejudice claims for loss due to COVID-19 shutdowns confirm that the instant policy's virus exclusion precludes Southshore from recovering its losses. *See, e.g., Goodwill Indus. of Cent. Oklahoma, Inc.*, 21 F.4th at 712–13 (holding that a virus exclusion was unambiguous and precluded claims

9

for losses caused by COVID-19); *Mudpie, Inc.*, 15 F. 4th at 894 (excluding coverage under a virus exclusion); *Mena Catering, Inc. v. Scottsdale Ins. Co.*, 512 F. Supp. 3d 1309, 1319–22 (S.D. Fla. 2021) (Bloom, J.) (listing cases and dismissing claim under exclusion for "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 510 F. Supp. 3d 1116, 1124–26 (Jung, J.) (dismissing claim under exclusion "for loss or damage caused by or resulting from any virus…that induces or is capable of inducing physical distress, illness or disease"); *Mauricio Martinez, DMD, P.A. Allied Ins. Co. of Am.*, 483 F. Supp. 3d 1189, 1192 (M.D. Fla. 2020) (Badalamenti, J.) ("Because Martinez's damages resulted from COVID-19, which is clearly a virus, neither the Governor's executive order narrowing dental services to only emergency procedures nor the disinfection of the dental office of the virus is a 'Covered Cause of Loss' under the plain language of the policy's exclusion."); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 616, 627 (E.D. Pa. 2020) (Savage, J.) (dismissing claim under identical virus exclusion for restaurants who were shut down as a result of COVID-19 shutdown orders). The Court concludes that the virus exclusion provision is unambiguous and that it applies in this case.[1]

---

[1] Independent advances several other arguments for why the insurance policy does not cover the losses Southshore allegedly suffered. (Doc. 11 at 11–19.) Because the Court holds that the policy excludes coverage for all losses caused by a virus, it does not reach Independent's other arguments.

Because Southshore's losses were caused by an excluded cause of loss, it cannot state a claim for breach of contract. And amendment of the complaint would be futile under these circumstances. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *Pane Rustica, Inc.*, 2021 WL 1087219 at *4. The Court dismisses Southshore's breach of contract claim with prejudice.

### B. Southshore Fails to Show the Policy Insures Its Losses

In its second count, Southshore seeks a judgment from this Court declaring that Independent is required to pay Southshore's losses under the insurance contract. Although Southshore seeks this declaratory judgment under Florida's Declaratory Judgment Act, the Court treats the request as if it were made under the federal Declaratory Judgment Act. Because Southshore's request for a declaratory judgment is merely duplicative of its breach of contract claim and the Court already concluded that Southshore failed to show that Independent breached the contract, the Court similarly concludes that Southshore fails to show that Independent must cover Southshore's losses and dismisses the declaratory judgment claim.

To start, although the complaint—filed in Florida state court before Independent removed the case—seeks a declaratory judgment under Florida's Declaratory Judgment Act, that statute is "a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights." *Coccaro v.*

11

*Geico Gen. Ins. Co.*, 648 F. App'x 876, 881 (11th Cir. 2016) (citing *Garden Aire Vill. S. Condo Ass'n Inc. v. QBE Ins. Corp.*, 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011)). And "Florida's procedural rules are inapplicable because this is a diversity case." *Garden Aire Vill. S. Condo. Ass'n Inc.*, 774 F. Supp. 2d at 1227 (quoting *Strubel v. Hartford Ins. Co. of the Midwest*, No. 8:09-cv-01858-T-17-TBM, 2010 WL 745616, at *2 (M.D. Fla. Feb. 26, 2010) (Kovachevich, J.)). Instead, the Court applies the federal rules governing declaratory judgments as set forth in the federal Declaratory Judgment Act. *See Coccaro*, 648 F. App'x at 881 (affirming a district court which construed a claim under the Florida Declaratory Judgment Act as a claim under the federal Declaratory Judgment Act).

As Independent argues in its motion to dismiss, Southshore's claim for declaratory judgment is "entirely duplicative of the breach of contract [claim]." (Doc. 22 at 23.) Southshore seeks a judgment declaring that Independent "is required to pay [Southshore] the damages resulting from the . . . business interruption claim." (Doc. 1-1 at 10.) Southshore's breach of contract claim alleges that Independent breached their contract with Southshore by denying coverage for the very same business interruption claim.[2] (Doc. 1-1 at 4–5.) Although Southshore received notice of Independent's argument that the

---

[2] In its response, Southshore argues that the declaratory judgment request is meritorious but fails to address whether the request is in any way distinct from its breach of contract claim. Southshore instead responds to other arguments made by Independent for dismissing Southshore's declaratory judgment claim. Because the Court does not rely on those arguments from Independent, it need not address any rebuttals from Southshore.

12

complaint suffered redundancy, Southshore offers no reason to think its request for declaratory judgment is distinct from its breach of contract claim.

Just as Southshore failed to show that Independent breached the contract because the insurance policy excluded Southshore's alleged losses from coverage, so Southshore fails to show it is entitled to a declaratory judgment. The policy did not require Independent to cover the losses Southshore suffered from COVID-19, a virus capable of inducing physical distress. (Doc. 1-6 at 28.) And amendment of the count would be futile under these circumstances. *See Burger King Corp*, 169 F.3d at 1320; *Pane Rustica, Inc.*, 2021 WL 1087219 at *4. The Court dismisses Southshore's breach of contract claim with prejudice.

## IV. CONCLUSION

Southshore brings claims for breach of contract and for a declaratory judgment. Both fail. No declaratory judgment is warranted because the insurance policy excluded Southshore's losses. Likewise, Independent did not breach its insurance contract with Southshore because it had no obligation to insure losses the policy did not cover. The Court dismisses this action with prejudice.

Accordingly, the following is **ORDERED**:

1. The Court **GRANTS** Independent Specialty Insurance Company, Inc.'s Motion to Dismiss. (Doc. 11.)

2. The Court **DISMISSES WITH PREJUDICE** Southshore Hospitality Management, LLC's breach of contract claim (Count I) and declaratory judgment claim (Count II).

3. The Clerk is directed to enter judgment in Defendants' favor, to terminate any other pending motions and deadlines, and to close this case.

**ORDERED** in Tampa, Florida, on January 25, 2022.

Kathryn Kimball Mizelle
United States District Judge